BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JEHAN PERNAS KIM (Cal. Bar No. 320584)
Assistant United States Attorney
Deputy Chief, Transnational Organized Crime Section
DECLAN T. CONROY (Cal. Bar No. 350570)
Assistant United States Attorney
Transnational Organized Crime Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (714) 338-3549/ (213) 894-2872
    Facsimile: (213) 894-0141
    E-mail:    jehan.kim@usdoj.gov
              declan.conroy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>JORGE RUBEN CAMARGO-CLARKE,<br><br>      Defendant. | No. CR 20-00390-AB<br><br><u>GOVERNMENT'S TRIAL MEMORANDUM</u><br><br>Hearing Date: Feb. 2, 2026<br>Hearing Time: 9:00 a.m.<br>Location:    Courtroom of the<br>          Hon. Andre Birotte<br>          Jr. |

      Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Jehan Pernas Kim and Declan T. Conroy, hereby files the Government's Trial Memorandum.

///

///

///

///

///

///

The Government's Trial Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 28, 2026                Respectfully submitted,

                                       TODD BLANCHE
                                       Deputy Attorney General
                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       ALEXANDER B. SCHWAB
                                       Assistant United States Attorney
                                       Acting Chief, Criminal Division


                                       _____/s/_____
                                       JEHAN PERNAS KIM
                                       DECLAN T. CONROY
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

### TRIAL MEMORANDUM

**I.    Summary of Charges and Case Status**

Defendant JORGE RUBEN CAMARGO-CLARKE ("defendant") is charged in the indictment with conspiring to distribute cocaine intending, knowing, or having reasonable cause to believe that such cocaine would be unlawfully imported into the United States, in violation of Sections 959(a), 960(a)(3), and 963 of Title 21 of the United States Code.

The trial in this matter is set for February 2, 2026 at 9:00 a.m.

**II.    Elements of the Charges**

For defendant to be found guilty of conspiring to distribute cocaine intending, knowing, or having reasonable cause to believe that such cocaine would be unlawfully imported into the United States, in violation of Sections 959(a), 960(a)(3), and 963 of Title 21, the government must prove the following:

First, beginning on a date unknown and continuing until on or about May 30, 2018, there was an agreement between two or more persons to distribute cocaine intending, knowing, or having reasonable cause to believe that such cocaine would be unlawfully imported into the United States; and

Second, defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

**III.  Summary of the Conduct**

Defendant is the head of the Bagdad syndicate, the largest drug trafficking organization in Panama. He is charged with conspiring to distribute cocaine knowing or having reasonable cause to believe it will be imported into the United States. The government will be

introducing testimony of U.S. and foreign law enforcement officials who spent years investigating defendant and the Bagdad syndicate regarding the scale and scope of defendant's and Bagdad's drug trafficking activities. The government will corroborate and supplement this testimony by introducing defendant's Blackberry Messenger ("BBM") communications with various co-conspirators, including Colombian cocaine sources of supply, which will show that defendant traffics in ton quantities of cocaine, and that defendant was focused on making sure the cocaine was being exported to other countries. The government will focus in particular on a specific drug load -- over 200 kilograms of cocaine -- that was seized on November 17, 2017 in Panama as an illustrative example of defendant's drug trafficking activities and the larger drug trafficking conspiracy.

## IV. Length of Trial and Number of Witnesses

As set forth in the government's Witness List (Dkt. 58), the government plans to call seven witnesses in its case-in-chief. The estimated time for the government's case-in-chief (without allotment for openings, defense cross-examinations, or closings) is approximately 12 hours, or two court days.

## V. Legal and Evidentiary Issues

### A. Colombian Blackberry Intercepts and U.S. Blackberry Intercepts

Colombian authorities intercepted the cooperator and defendant's BBM messages in 2017. In 2018, agents in the United States began intercepting defendant's BBM messages. The government will be admitting the Colombian Blackberry intercepts and the U.S. Blackberry intercepts through DEA Special Agent Efrain Estrada, who was one of the co-case agents for this investigation. The Colombian intercepts,

1  and the judicial orders authorizing the intercepts, were certified by

2  the Colombian government in response to a request made under the

3  operative Mutual Legal Assistance Treaty ("MLAT") between the United

4  States and Colombia.  The U.S. intercepts were obtained pursuant to a

5  district court order authorizing the interception of electronic

6  communications.

7  **B.  Expert Testimony: Reliability Finding**

8  After Supervisory Special Agent Samuel Bonner (drug smuggling

9  expert) describes his qualifications and expertise, the government

10  will request that the Court make an express reliability finding.

11  This finding is required by United States v. Holguin, et al., 51

12  F.4th 841 (9th Cir. 2022), in which the Ninth Circuit held that

13  "district courts must make explicit findings that the government's

14  expert testimony was reliable." Id. at 851 (emphasis added).

15  As the Court explained, "[a] district court abdicates its

16  gatekeeping role, and necessarily abuses its discretion, when it

17  makes no reliability findings.  Reliability findings must be made

18  explicit on the record – an implicit finding does not suffice.  This

19  requirement ensures that district courts engage in the reliability

20  inquiry and create a record of that inquiry to facilitate appellate

21  review." Id. at 851 (citations/quotations omitted).

22  Given Holguin's directive that such findings be "explicit," the

23  government therefore requests that the Court make a reliability

24  finding on the record before the expert proffers his opinions. The

25  government and defense counsel anticipate providing the Court with a

26  joint proposed order regarding this issue.

27

28

3

**C.    SSA Bonner Will Not Testify About Defendant's Mental State (_Diaz v. United States_)**

_Diaz v. United States_, 144 S. Ct. 1727 (2024), stemmed from an unpublished Ninth Circuit decision permitting "[expert] testimony that drug trafficking organizations rarely use unknowing couriers." _United States v. Diaz_, 2023 WL 314309, at *2 (9th Cir. 2023).  The Ninth Circuit's holding relied on a long line of Ninth Circuit cases that have generally permitted that type of expert testimony, "so long as the expert does not provide an 'explicit opinion' on the defendant's state of mind[.]"  _Id_. (citing _United States v. Gomez_, 725 F.3d 1121, 1128 (9th Cir. 2013) (holding that expert testimony was permitted because prosecutor's questions "only evoked expert testimony as to [the expert's] experience with drug traffickers and not any 'explicit opinion' of [Defendant's] state of mind or knowledge of his transportation of drugs")).

In _Diaz_, the Ninth Circuit acknowledged a clear split with the Fifth Circuit on this issue.  2023 WL 314309 at *2.  The Fifth Circuit had held that expert testimony that "most" people in a group have a particular mental state violated Rule 704(b).  _United States v. Gutierrez-Farias_, 249 F.3d 657, 663 (5th Cir. 2002).  This "clear and entrenched" circuit split was widely acknowledged by all the parties in _Diaz_.  _Diaz_ Cert. Pet., 2023 WL 9643013, at *3 (2023) ("The circuit split is clear and entrenched, and it extends even beyond the Ninth and Fifth Circuits."); Gov't Cert. Opp., 2023 WL 6390633, at *13 (2023) (acknowledging "the disagreement between the Fifth Circuit and other circuits," including the Ninth Circuit).

In _Diaz_, the Supreme Court sided with the Ninth Circuit over the Fifth Circuit, affirmed the Ninth Circuit's ruling without _any_

4

modifications or qualifications, and concluded that "[a]n expert's conclusion that 'most people' in a group have a particular mental state is not an opinion about 'the defendant' and thus does not violate Rule 704(b)." 144 S. Ct. at 1735. The Supreme Court further explained that "Rule 704(b) applies only to opinions about the defendant[,]" and since in <u>Diaz</u>, the expert "did not express an opinion about whether [the defendant] knowingly transported methamphetamine, his testimony did not violate Rule 704(b)." 144 S. Ct. at 1733.

Essentially, the narrow scope of testimony prohibited by Rule 704(b) is an expert opinion "about" the ultimate issue of the defendant's mental state if it includes an explicit or direct opinion on that precise topic, not merely if it concerns or refers to that topic. <u>Id.</u> at 534. Additionally, <u>Diaz</u> suggests that if an expert testifies that all individuals in a group have a certain state of mind, and then places the defendant in that group, the expert may be opining on the defendant's mental state. The government's expert, Supervisory Special Agent Bonner, will not express an opinion about the defendant's mental state, nor will Agent Bonner be making blanket assertions about the mental state of cocaine smugglers.

**D.  Judicial Notice**

"Judicial notice" is the court's recognition of the existence of a fact without the necessity of formal proof.  <u>See</u> <u>Castillo-Villagra v. I.N.S.</u>, 972 F.2d 1017, 1026 (9th Cir. 1992); <u>United States v. Harrison</u>, 651 F.2d 353, 355 (5th Cir. 1981).  Facts proper for judicial notice are those facts not subject to reasonable dispute and either "generally known" in the community, or "capable of accurate and ready determination" by reference to sources whose accuracy

cannot be reasonably questioned.  Fed. R. Evid. 201.  The United States will seek to admit maps obtained from Google Maps and other sources to aid the jury in understanding the countries, and shipment routes through which cocaine is flowing from Colombia.  The maps will be authenticated by law enforcement officers or other witnesses who are familiar with the areas depicted in the maps. The Court may properly admit maps, including maps from from Google Maps, because they are not hearsay, especially when a witness familiar with the area depicted on the maps testifies that the maps are accurate. United States v. Lizarraga-Tirado, 789 F.3d 1107, 1109 (9th Cir. 2015). The Court may also take judicial notice of maps, including online maps and satellite images. See United States v. Perea-Rey, 680 F.3d. 1179, 1182 n.1 (9th Cir. 2012).

**VI.  CONCLUSION**

The government respectfully requests leave to file supplemental trial memoranda before or during trial, as may become appropriate.